### In the Matter of PATRICK CUDAHY INCORPORATED, Debtor in Possession.

### Bankruptcy No. 87–05413.

United States Bankruptcy Court, E.D. Wisconsin.

June 30, 1988.

---

Howard Schoenfeld and David Loeffler, Milwaukee, Wis., Sp. Counsel for Patrick Cudahy Inc.

Kenneth Loebel, Milwaukee, Wis., for Union P–40.

Daniel Shneidman, Milwaukee, Wis., for Retirees' Committee.

Paul Medved, Milwaukee, Wis., for Sovran Bank.

Jerome Kerkman, Milwaukee, Wis., for Molly Corp.

David Walsh, Madison, Wis., for Cudahy Equity Corp.

Gerald McKinney, for N.L.R.B.

Peter C. Blain, Milwaukee, Wis., for Creditors' Committee.

## DECISION

RUSSELL A. EISENBERG,
Bankruptcy Judge.

On June 16, 1988, Congress enacted Public Law 100–334, 102 Stat. 610–615. Sections 1 and 2 of the Act constitute the "Retiree Benefits Bankruptcy Protection Act of 1988." Section 3 of the Act (Public Law 99–591) amends Section 608(a) of the second title VI of the joint resolution entitled "Joint resolution making continuing appropriations for the fiscal year 1987, and for other purposes", approved October 30, 1986 (Public Law 99–591; 100 Stat. 3341–74) ("Sec. 608"). The effect of Sections 1 and 2 of the Act was to create § 1114 of the bankruptcy code to give certain benefits and protections to retirees in cases commenced on or after the effective date of the Act. The effect of Section 3 was to resurrect the legislation originally intended primarily to assist LTV retirees (see *In re Chateaugay Corporation, Reomar, Inc., LTV Corporation, et al.*, cases, Nos. 86 B 11270—86 B 11334, 86 B 11402 and 86 B 11464, S.D.N.Y.), and to make that legislation applicable to pending cases. (See Congressional Record, Senate, May 27, 1988, S 6825). The case before this court [*Patrick Cudahy Incorporated*] was pending before June 16, 1988.

Congress intended retirees in pending cases to have the same benefits pursuant to Sec. 608 as retirees in new cases will have pursuant to § 1114. Senator Metzenbaum stated (in the Congressional Record, Senate, May 26, 1988, S 6825, pertaining to Public Law 100–334), "The fact that some specific language appears in section 2 but not section 3 shall not imply that section 3 conveys fewer rights or protections to retirees than section 2." Sec. 608, as amended, does not in and of itself give retirees all

of the benefits and protections available under § 1114. In order to achieve the expressed intent of Congress when applying Sec. 608, it is necessary to read Sec. 608 and § 1114 together, even though nothing in either Sec. 608 or § 1114 expressly requires that to be done.

Sec. 608(a)(2)(B) states that the authorized representative for retirees whose benefits are covered by a collective bargaining agreement "shall be the labor organization that is signatory to such collective bargaining agreement *unless there is a conflict of interest.*" (emphasis added). § 1114(c)(1) provides for a labor organization to be "the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, unless (A) such labor organization *elects not to serve* as the authorized representative of such persons ..." without requiring a conflict of interest to exist. (emphasis added)

The Official Retiree Committee ("Committee") in this case brought a motion to be the authorized representative of all retirees, and for its counsel to represent the Committee in its capacity as authorized representative.

The United States trustee perceived early in this case that the objectives of the retirees differed markedly from the objectives of current employees. After learning that the retirees believe they are entitled to lifetime medical benefits, and if they receive those benefits, the debtor may be hard pressed to meet the demands of employees to increase their current salaries to what they believe are just wages, the United States trustee wisely established an Official Retirees' Committee.

In this case not all retirees were members of the same union, and some retirees were not members of any union. There is disagreement whether any retirees are covered by a collective bargaining agreement, and to date no one has requested this court to make that determination. One of the unions won't agree to be the authorized representative; the other union is silent on the subject.

"Chapter 11 is supposed to promote bargaining..... It is ... intended to be a forum in which parties would be able to reach some kind of deal without involving all the procedures." (Douglas G. Baird and Thomas H. Jackson, *Cases, Problems and Materials on Bankruptcy,* Little, Brown and Company 617 (1984)). To compel either or both unions to represent retirees when the unions might incur liability in the process or for other good reasons choose not to act in that capacity is contrary both to the philosophy of the Code and to common sense.

The debtor is presently attempting to resolve a number of critical issues, such as a bitter labor strike, a national boycott of its products, N.L.R.B. hearings and appeals, and a hostile acquisition attempt by striking employees, who are partially funded by the State and County. To require the debtor to negotiate with three distinct authorized representatives (two labor unions and one group of disorganized non-union retirees) will result in the debtor having little precious time to conduct its business, particularly since the two unions would have to negotiate with great caution and with conservatism to make certain that they avoid all conflicts with the current employees they represent.

If retirees are to have the same benefits pursuant to Sec. 608 as under § 1114, as intended by Congress, they must have an authorized representative other than the unions in a position to bargain on their behalf. Whether or not any or all of the retirees are covered by a collective bargaining agreement, prudence dictates, and at least one of the unions agrees, the unions are not the best entities to represent the retirees.

A court should take "into account the purpose and history behind ... [a] ... relevent statutory law and the broad interpretation to be given to the bankruptcy code in general." In the *Matter of Armstrong,* 812 F.2d 1024, 1026 (7th Cir.1987), cert. denied —— U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987). Although Sec. 608 is not a portion of the bankruptcy code, it is bankruptcy law.

"The Supreme Court has clearly and repeatedly underscored the court's obligation" in interpreting a statute. (Klee and Merola, "Ignoring Congressional Intent: Eight Years of Judicial Legislation," 62 *Am.Bankr.L.J.* 1 (1988). Courts must "determine congressional intent and give effect to it." *Id.* In an Interstate Commerce Commission case, the Supreme Court stated, "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Associations*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). In a decision pertaining to Aid to Families with Dependent Children, the Justice Rehnquist wrote, "Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will." (*Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975)). In a decision pertaining to the Labor Management Relations Act, 1947, Justice Black wrote, "In dealing with problems of interpretation and application of federal statutes, we have no power to change deliberate choices of legislative policy that Congress has made within its constitutional powers. Where congressional intent is discernible—and here it seems crystal clear—we must give effect to that intent." *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 215, 82 S.Ct. 1328, 1339, 8 L.Ed.2d 440 (1962). That general law is no different in a bankruptcy setting.

A literal reading of Sec. 608 without reference to its Congressional history, including § 1114, would result in the court not giving effect to the clearly stated intent of Congress, and it would result in hardship to the debtor. Since Congress simultaneously amended Sec. 608 and enacted § 1114, it is appropriate to read both provisions of the law and their history in harmony. Judge Ginsberg stated, "When a literal reading of a statute would defeat the statute's purpose or cause extreme hardship, the language may be read to be harmonious with the statute's purpose. 2A Sutherland, Statutory Construction § 57.03

(4th ed. 1984) ..." *In re Vilt*, 56 B.R. 723, 725 (Bankr.N.D.Ill.1986).

Congress did not in Sec. 608 address the resolution of the problem occurring when a labor organization refuses to consent to be the authorized representative without acknowledging that it has a conflict of interest or a court making that finding, and what procedure should be followed by the court in appointing an authorized representative if a labor organization would not so act. Congress did address and solve those problems in § 1114(c) by permitting a union to *elect* not to serve and by the court appointing a committee of retired employees after motion, notice and a hearing, thereby avoiding problems which typically arise following an acknowledgement or finding of a conflict of interest.

In permitting the Official Retirees' Committee to be the authorized representative for all retirees, this court is not exercising "freefloating discretion to redistribute rights in accordance with ...personal views of justice and fairness." (See *In the Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 791 F.2d 524, 528 (7th Cir.1986).) This court is adhering to the intent of Congress, not deviating from it. In another bankruptcy context, the Seventh Circuit held that statutory provisions "should not be applied strictly in accord with their literal meaning when to do so would pervert the manifest purpose of Congress." *Wisconsin Higher Education Aids Board v. Lipke*, 630 F.2d 1225, 1230 (7th Cir.1980)

This court will not compel either or both unions to represent any of the retirees. The motion of the Official Retirees' Committee is granted. That Committee shall be the authorized representative of all of the retirees within the meaning and context of Sec. 608(a)(2)(B). Its duties are expanded to cover its activities as authorized representative of all retirees. The duties of counsel for the Committee are expanded to permit them to act as counsel for the Committee in its capacity as authorized representative.

The court will enter an order in accordance with this Decision.