**In re JONES & LAMSON MACHINE CO., INC., Debtor.**

**UNITED STEEL WORKERS OF AMERICA, AFL–CIO, and Herbert E. Schlander, John R. Bly and Robert Cook, individually and as representatives of retired persons formerly employed by Jones & Lamson Machine Co. at its Cheshire, Connecticut Plant, Plaintiffs,**

v.

**JONES & LAMSON MACHINE CO., INC., and Textron, Inc., Defendants.**

**Bankruptcy No. 5–86–00762.**
**Adv. No. 5–88–0155.**

United States Bankruptcy Court,
D. Connecticut.

June 26, 1989.

Warren H. Pyle, Barbara Hickingbottom, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., for plaintiffs.

Roy Babitt, Anderson, Russell, Kill & Olick, P.C., New York City, Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for defendant, debtor.

Robert M. Dombroff, Walter E. Paulekas, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for defendant, Textron, Inc.

C. Frank Carbiener, Ruth McQuade, U.S. Dept. of Justice, Civil Div., Commercial Litigation Branch, Washington, D.C., for the U.S.

## MEMORANDUM AND DECISION ON MOTION TO DISMISS

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor, supported by its secured creditor and codefendant Textron, Inc., moves to dismiss this case pursuant to Rules 12(b)(6) and 56 Fed.R.Civ.P., made applicable by Bankruptcy Rules 7012(b) and 7056. For the reasons that follow, summary judgment is granted under Rule 56.

### BACKGROUND

The individual plaintiffs, acting for themselves and purportedly on behalf of seventy-three others, were employed by Textron at its Cheshire, Connecticut plant when it was sold to the debtor on May 24, 1985. While employed by Textron, they were represented by the United Steel Workers of America, AFL–CIO (the "union") under successive collective bargaining agreements which provided, *inter alia*, for certain retiree health and life insurance benefits. As part of the sale of the Cheshire plant, the debtor assumed Textron's obligations for those benefits. In September, 1985, the union and the debtor entered into new collective bargaining agreements which covered the period from September 1, 1985 to August 31, 1987. In July, 1986, the debtor stopped paying premiums for retiree insurance. On November 10, 1986,

the debtor filed a petition under chapter 11 of the Bankruptcy Code.

On March 6, 1987, the plaintiffs, relying on Public Law Nos. 99–656 and 99–591, instituted an adversary proceeding against the defendants to compel the debtor to continue providing retiree insurance benefits. The debtor's motion to dismiss that adversary proceeding was treated as a motion for summary judgment because the June 30, 1987 decision granting the motion was based in part on the concession of the parties

> that the debtor has no property that is not encumbered by a Textron lien. ... Thus, it is conceded that if payment is to be made by the debtor, as demanded in the amended complaint and motion for injunctive relief, it will have to come from collateral securing the debt owed to Textron.

*United Steelworkers of Am., AFL–CIO v. Jones & Lamson Mach. Co., Inc. (In re Jones & Lamson Mach. Co., Inc.)*, 75 B.R. 208, 209–210 (Bankr.D.Conn.1987) ("*J & LI*"), *aff'd*, Civ. No. B 87–557 (D.Conn. Apr. 7, 1988), *appeal withdrawn per stipulation*, No. 88–5023 (2d Cir. Dec. 21, 1988).[1]

Public Law Nos. 99–656 and 99–591 directed a trustee or, as in this case, a debtor in possession, *see* 11 U.S.C. § 1107(a), to pay benefits "[n]otwithstanding any other provision of *chapter 11* ...." (Emphasis added). In construing that phrase, *J & LI* held that the law

> should not be read to indirectly repeal state and federal law which would otherwise provide for or permit the enforceability of valid and perfected liens. A different reading might inhibit the ability of debtors to attract post-petition lenders

and frustrate their efforts to reorganize. If Congress intended ... [Public Law Nos. 99–656 and 99–591] to eliminate the restrictions on lien avoidance imposed on trustees or debtors in possession by chapters 3 and 5, *see* 11 U.S.C. §§ 363(c)(3), 363(e), and 506(c), it would have made that intent specific by express language. ... [Public Law Nos. 99–656 and 99–591 are] therefore construed to avoid modification of the Bankruptcy Code by implication and eliminate conflict between that legislation and chapters 3 and 5.

> ... There are no unencumbered assets of the debtor, and the debtor has no means of providing Textron with adequate protection as required by § 363(e). Therefore, in the context of this proceeding, the debtor may not invade Textron's collateral.

*Id.* at 210.

Section 3(a) of Public Law No. 100–334 amended § 101(b), Sec. 608 of Public Law No. 99–591.[2] Amended § 608(a)(1), which is applicable here,[3] now directs a debtor in possession to pay retiree benefits "notwithstanding *title 11* of the United States Code...." (Emphasis added). On December 12, 1988, the plaintiffs filed this adversary proceeding, seeking, as it did in *J & LI*, an order

> requiring the Debtor to pay benefits to retired employees of the Cheshire, Connecticut plant as set forth in the 1982–1985, 1985–1986, and 1986–1987 agreements described herein; such payment to be made, if necessary, from property of the Debtor subject to a security interest in favor of Textron, Inc. or other secured creditors ....

---

**1.** Rule 12(c) Fed.R.Civ.P. provides in part that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

**2.** Public Law No. 100–334, § 3(b), repealed Public Law No. 99–656.

**3.** Section (c) of amended § 608 provides:
  This section is effective with respect to cases commenced under chapter 11, of title

11, United States Code, in which a plan for reorganization has not been confirmed by the court and in which any such benefit is still being paid on October 2, 1986, and in cases that become subject to chapter 11, title 11, United States Code, after October 2, 1986 and before the date of the enactment of the Retiree Benefits Protection Act of 1988 [June 16, 1988].
Pub.L. No. 99–591, § 101(b), Sec. 608 (1986), *amended by* Pub.L. No. 100–334, § 3(a)(2), (a)(3)(A) (1988).

*Complaint at 11–12.*[4]

On January 19, 1989, the debtor filed the instant motion, contending that amended § 608 is intended to grant retirees an administrative status rather than priority over secured creditors. Joined by Textron, the debtor cites *General Electric Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10, 12–13 (2d Cir.1985), and argues that the subordination of a secured creditor's property rights to an administrative expense in the absence of the secured creditor's consent or a finding that use of its collateral was primarily for its benefit would violate a well established bankruptcy principle. Moreover, the defendants contend that if debtors were required to invade collateral, cases might be dismissed or converted under § 1112(b) or relief sought from the automatic stay under § 362(d). Thus, they reason, since Congress could not have intended to discourage rehabilitation but rather advance the interests of retirees, amended § 608 must be read to promote not frustrate those goals, and the word "shall" must be read to mean "may".

The plaintiffs argue that the meaning of amended § 608 is clear and that they are entitled to the order sought in their complaint. They disclaim any concern that the remedy they seek might force the chapter 7 liquidation of the debtor and the end of retiree benefits.[5] The United States appears to be steering a middle course. Recognizing that amended § 608 faces a constitutional challenge that an invasion of Textron's collateral would violate the Taking Clause of the Fifth Amendment, the government disagrees with the plaintiffs that payment must be made if necessary from property subject to Textron's security interest. But the government also disagrees with the defendants, arguing that the dismissal of this adversary proceeding is inappropriate because the plaintiffs are entitled to an order directing compliance with the law. The government's solution to the dilemma created when there are no unencumbered assets to pay retiree benefits is dismissal of the case.[6]

---

4. It is noted that the issue of what, if any, payment had to be made under amended § 608 could have been raised by the debtor pursuant to amended § 608(a)(2), which provides:

> The level of benefits required to be paid by this subsection may be modified prior to the confirmation of a plan under section 1129 of such title if—
> (A) the trustee and an authorized representative of the former employees with respect to whom such benefits are payable agree to the modification of such benefit payments; or
> (B) the court finds that a modification proposed by the trustee meets the standards of section 1113(b)(1)(A) of such title and the balance of the equities clearly favors such modification.

Thus, the debtor, which has no unencumbered assets, could have proposed to modify the retiree benefits to zero under the standards of § 1113(b)(1)(A), which provides:

> Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—
> (A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and as-

sures that all creditors, the debtor and all of the affected parties are treated fairly and equitably....

5. The following discussion occurred at the hearing:

> The Court: [I]t seems to me that ... the union must ... understand what's going to be best for its constituents ... [whether] it's good for the rank and file to ... have it more difficult ... [for] companies to rehabilitate, and be forced into liquidation. Why would the union want that result?
> Ms. Hickingbottom: The union is prepared to accept that.
> The Court: Why would the union not fight against that result?
> Ms. Hickingbottom: The union would fight against it, but it's prepared to accept it.
> The Court: Okay. But you're doing more than accepting it, you're fighting for it.
> Ms. Hickingbottom: I'm saying that ... we recognize it's possible, and that we're willing to accept it in order to take the statute for its literal value.
> The Court: But isn't that ...
> Ms. Hickingbottom: You're right. It has practical consequences that [are] grave for some of our members.

*Transcript of April 26, 1989 Hearing, at 41–42.*

6. During oral argument, the government suggested that the payment of retiree benefits under amended § 608 is "analogous to a filing

At the April 26, 1989 hearing, the debtor stated, as it did in *J & LI*, that all of its assets are subject to Textron's security interest. *Transcript of April 26, 1989 Hearing at 7.* This motion is accordingly decided under Rule 56. *See supra* note 1.

### DISCUSSION

In discerning the reach of amended § 608, principles of statutory construction are not only helpful guideposts, they supply the answer. In *United States v. Security Industrial Bank*, 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982) (quoting *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978)), the Supreme Court reenunciated the " 'cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which [a] ... constitutional question may be avoided.' " *Security Industrial Bank* also held that "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." *Id.* at 81, 103 S.Ct. at 414. *See also Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) ("[Courts] cannot impute to Congress ... a radical departure from established law in the absence of express congressional command."). In the same vein, the Supreme Court in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986), *reh'g. denied*, 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986), held that "[t]he normal

rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."

1.

In an effort to mute a constitutional challenge, the plaintiffs argue that the use of Textron's collateral to satisfy the debtor's obligation is permissible under the three part taking test discussed in *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986).[7] But the *Connolly* test does not avoid the constitutional challenge, it merely supplies an analysis for its resolution. The constitutional question may be avoided by reading amended § 608 to require the debtor to pay retiree benefits if unencumbered funds are available. That result is mandated by the application of a second principle of statutory construction.

2.

The Bankruptcy Code has traditionally served as a fulcrum to balance competing economic interests. On the one hand, those who extend credit seek the preservation of their collateral in order to enforce the benefit of their bargain. On the other, a broader public policy, recognizing the social benefits of providing a fresh economic start to financially distressed debtors, encourages, in the context of chapter 11, rehabilitation by providing a reasonable opportunity for a successful reorganization within a reasonable time. Thus, in exchange for the right, *inter alia*, to stay the collection of prepetition debt, 11 U.S.C. § 362; to use, lease, and sell broadly defined property of the

---

fee", in that a debtor must pay the benefits if it "want[s] to use chapter 11 reorganization." *Transcript at 52.* The government cited no authority, and I find that its argument is unavailing.

The payment of a fee under 28 U.S.C. § 1930(a)(3) is a condition precedent to the commencement of a bankruptcy case. Amended § 608, on the other hand, establishes a mechanism for dealing with retiree benefits during the chapter 11 proceedings. It does not impose conditions upon eligibility for relief under chapter 11. *See* 133 Cong.Rec.S 2238 (daily ed. Feb. 19, 1987) (statement of Sen. Byrd).

7. In *Connolly*, the Court stated that to aid in the taking determination, "we have identified three factors which have 'particular significance': (1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " *Id.* at 224–225, 106 S.Ct. at 1025–26 (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978)).

bankruptcy estate, 11 U.S.C. §§ 363, 541; to compel the turnover of such property, 11 U.S.C. § 542; a chapter 11 debtor is required to provide adequate protection, 11 U.S.C. §§ 361, 363(e), which is intended to preserve, in some form, sufficient collateral to protect a secured creditor's property rights. The question evolves, is amended § 608 an "explicit command from Congress" that if there is no unencumbered property, chapter 11 debtors must pay retiree benefits from property subject to a security interest?

There is superficial support for the argument that prior to the enactment of amended § 608, the Bankruptcy Code only permitted a debtor to use property subject to a creditor's security interest if such interest was adequately protected, and that amended § 608 specifically eliminated that protection. It is clear, however, from a closer reading that amended § 608 only implicates the Bankruptcy Code and leaves intact those property rights derived from the operation of applicable nonbankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Such a reading comports with the principle of statutory construction that had Congress intended to override property rights arising under state law, amended § 608 would have been written to expressly achieve that result, as, for example, "notwithstanding title 11 of the United States Code *and any applicable nonbankruptcy law*, the trustee shall pay...." *See, e.g.,* 11 U.S.C. §§ 541(c), 1123(a), 1142(a). In the absence of such express language, I decline to give the new law

broader effect than is mandated by its plain words. Accordingly, I conclude that amended § 608 means that a chapter 11 debtor *shall* pay benefits to retirees if there is unencumbered property from which such payments *may* be made.

### 3.

This conclusion is buttressed by a third principle of statutory construction, enunciated by the Supreme Court in *Midlantic, supra* at 15–16, that judicially created concepts are not changed by legislation absent specific language to that effect. It is well settled that a secured creditor's collateral may not be used to satisfy administrative expenses or pay for the general cost of reorganization unless it consents or the use was primarily for its benefit. *Central Bank of Mont. v. Cascade Hydraulics and Util. Serv., Inc. (In re Cascade Hydraulics and Util. Serv., Inc.)*, 815 F.2d 546, 548–49 (9th Cir.1987); *Flagstaff II, supra,* 762 F.2d at 12–13; *Matter of Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982). Amended § 608 gives retiree benefits an administrative expense status.[8] There is no express language in amended § 608 which enunciates an exception to the *Flagstaff* rule.

### 4.

Further, it is observed that a requirement that retiree benefits be paid out of a secured creditor's collateral might diminish access to pre-petition or post-petition refinancing, discourage the use of chapter 11 in the first instance, and encourage a secured creditor to seek early relief from the automatic stay. Any such consequence would not only defeat the public policy of promoting the rehabilitation of financially distressed companies, it would frustrate the legislative goal of amended § 608 by making the payment of retiree benefits more remote. Indeed, as noted, amended § 608(a)(2) adopts the § 1113(b)(1)(A) stan-

8. This conclusion is supported by reference to § 1114, which was enacted as part of the same public law which amended § 608, Public Law No. 100–334. *Matter of Patrick Cudahy, Inc.,* 88 B.R. 895, 896 (Bankr.E.D.Wisc.1988) ("Congress intended retirees in pending cases to have the same benefits pursuant to Sec. 608 as retirees in new cases will have pursuant to § 1114."). Code § 1114(e)(2) provides:

Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title. *See also* 134 Cong.Rec. 6825 (1988) (statement of Senator Metzenbaum) (The bill "makes clear that retiree benefit claims are entitled to an administrative priority.").

dards for rejecting collective bargaining agreements. *See supra* note 4. As that provision contemplates changes necessary to " 'enable the debtor to complete the reorganization process successfully ...,' " *New York Typographical Union No. 6 v. Royal Composing Room, Inc. (In re Royal Composing Room, Inc.)*, 848 F.2d 345, 348 (2d Cir.1988) (quoting *Truck Drivers Local 807 v. Carey Transportation, Inc.*, 816 F.2d 82, 90 (2d Cir.1987)), *cert. denied,* —— U.S. ——, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989), it is apparent that amended § 608 was not intended to force the liquidation of a debtor which is unable to pay retiree benefits.

## CONCLUSION

The relief sought by the plaintiffs is not available under amended § 608. The defendant's motion to dismiss is granted, and

IT IS SO ORDERED.