In re Jonathan B. KELLOGG, Debtor.

Jonathan B. KELLOGG, Plaintiff,

v.

KEY BANK OF MAINE f/k/a Key Bank of Central Maine, Defendant.

Bankruptcy No. 91–52440.
Adv. No. 92–5216.

United States Bankruptcy Court,
D. Connecticut.

March 31, 1994.

Byron Paul Yost, Jonathan D. Zabin, Yost & Associates, P.C., New Haven, CT, for debtor/plaintiff.

James M. Nugent, Charmoy & Nugent, Bridgeport, CT, for defendant.

## MEMORANDUM AND ORDER ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

ALAN H.W. SHIFF, Bankruptcy Judge.

On August 4, 1992, the plaintiff commenced this adversary proceeding for a determination that certain debts owed to the defendant were dischargeable as student loans. *See* § 523(a)(8). The plaintiff now moves for leave to file an amended complaint (the "Amended Complaint") to add an additional count seeking, *inter alia,* money damages for alleged violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), *see* Conn.Gen.Stat.Ann. § 42–110a, *et seq.* (West 1992). A copy of the Amended Complaint is annexed hereto for reference. For the reasons that follow, the plaintiff's motion is denied.

### BACKGROUND

This voluntary chapter 11 case was commenced on September 9, 1991. The instant complaint alleges that the plaintiff executed three notes in favor of the defendant and that the loans were to help pay for the education of his daughters. The notes were executed on or about August 5, 1986, July 28, 1987, and July 19, 1988, and the proceeds from each loan were distributed directly to educational institutions. The 1987 loan renewed the 1986 loan and also advanced new funds. On December 6, 1991 the defendant filed proofs of claim for the 1987 and 1988 notes. Each note identifies the plaintiff as the "borrower" and one of the plaintiff's children as the "student." Each note contains the following provision:

> **ADVANCES TO EDUCATIONAL INSTITUTION:** This loan is to pay educational expenses. I authorize the Bank or its authorized agent to pay loan proceeds directly to the school or college I designate in periodic advances expected to be in the following amounts and dates.... No advances will be made if: ... the student ceases to be enrolled as a full-time student at the Educational Institution.

1. The debtor's plan of reorganization was confirmed on December 27, 1991. That confirma-

In essence, the complaint seeks to rescind the loans and notes because of fraud or in the alternative a determination that the corresponding debts were discharged.[1] The plaintiff argues that although the CUTPA claim is a new cause of action, he may assert it because it is not time barred, has not been unduly delayed, and would not prejudice the defendant. I disagree.

### DISCUSSION

Rule 15, Fed.R.Civ.P., made applicable by Rule 7015, Fed.R.Bankr.P., provides in relevant part:

> (a) [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

> (c) An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

The Supreme Court has held that,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

1.

### Futility of Amendment

 As noted in *Foman,* leave to amend a complaint may be denied if the amendment would be futile. Moreover, the court of ap-

tion did not discharge debts excepted from discharge under § 523. See § 1141(d)(2).

peals in this circuit has held that leave to amend should be denied if there is no merit in the proposed amendments. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990); *see also Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *McNally v. Yarnall,* 764 F.Supp. 853, 855 (S.D.N.Y.1991); *see also Brown v. DeFillipis,* 717 F.Supp. 172, 177–178 (S.D.N.Y.1989). In considering whether the plaintiff's proposed amendment would survive a motion to dismiss, "the question for this court to decide is 'whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims.'" *Urashka v. Griffin Hosp.,* 841 F.Supp. 468, 472 (D.Conn.1994) (quoting *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979)). In making that determination, I must accept all of the plaintiff's factual allegations as true and draw all inferences in the light most favorable to the plaintiff. *Id.* Leave to amend to assert a cause of action that is barred by the applicable statute of limitations may be denied. *Moffitt v. Town of Brookfield,* 759 F.Supp. 94, 95 (D.Conn.1991).

■ Section 42–110b(a) (West 1992) provides:

No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

The following criteria must be examined in determining whether an act or practice is unfair under CUTPA:

"(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ]." A violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy.

*Murphy v. Provident Mut. Life Ins. Co. of Philadelphia,* 923 F.2d 923, 929 (2d Cir.1990) (quoting *Web Press Servs. Corp. v. New London Motors, Inc.,* 203 Conn. 342, 355, 525 A.2d 57 (1987)), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991) (citations omitted). The substantial injury criterion is met only where the injury is substantial, is not outweighed by countervailing benefits to consumers or competitors, and is one that consumers could not reasonably have avoided. *Chem–Tek, Inc. v. Gen. Motors Corp.,* 816 F.Supp. 123, 130 (D.Conn.1993).

All three criteria do not need to be satisfied. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. An act or practice is considered deceptive under CUTPA if it has a tendency or capacity to deceive. In evaluating tendency or capacity, the court should look to the least rather than most sophisticated readers.

*Shell Oil Co. v. Wentworth,* 822 F.Supp. 878, 884–85 (D.Conn.1993) (citations omitted). Actual intent to deceive need not be proven. *Cheshire Mortgage Serv., Inc. v. Montes,* 223 Conn. 80, 106, 612 A.2d 1130 (1992).

■ An action under CUTPA "may not be brought more than three years after the occurrence of a violation of this chapter." Conn.Gen.Stat.Ann. § 42–110g(f) (West 1992). That language "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred," but CUTPA's statute of limitation may be tolled where the defendant's course of conduct is continuing. *Fichera v. Mine Hill Corp.,* 207 Conn. 204, 209, 212, 541 A.2d 472 (1988). "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for

bringing an action for such a wrong," and it may be found where there is a special relationship between the parties giving rise to a continuing duty, or later wrongful conduct by the defendant related to the prior wrongful act. *Id.,* 207 Conn. at 209–10, 541 A.2d 472; *see Doe v. British Universities N. Am. Club,* 788 F.Supp. 1286, 1296–1297 (D.Conn.1992). Further, notwithstanding the general rule regarding statutes of limitation, the Connecticut Supreme Court has held in the CUTPA context that where an allegedly deceptive act is of such a character as to conceal itself, there is no tolling of CUTPA's three year statute of limitations. *Fichera, supra,* 207 Conn. at 216–17, 541 A.2d 472; Conn.Gen. Stat.Ann. § 52–595 (West 1991).

■ The plaintiff's proposed Count IV which adds a CUTPA claim neither contains nor incorporates any additional factual allegations beyond those contained in the original complaint. The allegedly unfair or deceptive acts or practices are set forth in paragraphs 12 through 14 of Count I. Paragraph 13 alleges that the defendant failed to disclose certain facts regarding the governmental status of the loans "[a]t the time the Plaintiff applied for the Loans and the Notes were signed." Paragraph 14 alleges that the defendant induced the plaintiff to execute the notes through fraud or mistake by presenting them as consumer, not student, loans. Reading those allegations in the light most favorable light to the plaintiff, he appears to be asserting that the defendant misled him into believing that the loans would be dischargeable in bankruptcy as consumer loans. Assuming *arguendo* that either of those allegations could form a predicate for a CUTPA violation, the last of the three notes was executed July 19, 1988. The petition was filed September 9, 1991. It is noted that the plaintiff cannot claim the benefit of the tolling provisions of § 108(a)(2) because the CUTPA limitations period, if not tolled, expired prepetition. Thus, the acts identified in paragraphs 13 and 14 are time barred unless the plaintiff has alleged facts support-

ing a prepetition tolling of the statute of limitations period.

I find no such facts in the Amended Complaint. There is no allegation of any duty on the part of the defendant that continued after execution of the notes, and that the defendant breached that duty. A continuing duty to disclose prior deception might arise, for example, out of a fiduciary relationship between the plaintiff and the defendant. *See Fichera, supra,* 207 Conn. at 210, 541 A.2d 472. No facts are alleged to support such a relationship. *See Dunham v. Dunham,* 204 Conn. 303, 322, 528 A.2d 1123 (1987) ("A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other."); *Stoner Group, Inc. v. First Bank of West Hartford,* 1992 WL 183797, at *3 (Conn.Sup.Ct., July 27, 1992). Further, there is no allegation of fraudulent concealment on the part of the defendant.[2]

■ The plaintiff also relies on Paragraph 12 of the Amended Complaint, which alleges that the defendant asserted that the loans were nondischargeable and refused to produce evidence to support that assertion upon request. The plaintiff argues that the defendant's alleged assertion of nondischargeability is itself an unfair or deceptive practice under CUTPA, and that the defendant's alleged assertion was made on December 9, 1991, *after* the petition was filed and well within the three year CUTPA statute of limitations. It is noted that the Amended Complaint does not allege when the assertion occurred, but more to the point, neither an assertion of nondischargeability nor a refusal to produce documentary support for the assertion is unfair or deceptive under CUTPA.

The defendant's alleged assertion of nondischargeability would not be deceptive; indeed, any such statement would produce a contrary result by making the plaintiff aware of the potential consequences of the defendant's allegedly fraudulent or deceptive fail-

---

2. The plaintiff relies on *City of West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 546 (2d Cir.1990). That case provides no support for the plaintiff's position. There, the court held that an insurer's continuing duty to defend its insured created a "special relationship" between the parties sufficient to toll CUTPA's statute of limitations.

ure to disclose when the loans were made that they were educational loans within the meaning of § 523(a)(8). Moreover, any assertion that a debt is nondischargeable would not be an unfair trade practice under CUTPA because it would not offend public policy, would not be not immoral, unethical, oppressive, or unscrupulous, and would not cause substantial injury to consumers.

The plaintiff's argument attempts to read a provision into CUTPA which would toll the running of the statute of limitations until after the plaintiff's discovery of the alleged unfair or deceptive act. However, the *Fichera* court held that, "[d]espite the existence in other states of statutes of limitation applicable to unfair trade practices establishing a limitation period for bringing an action that begins after discovery of the violation, our legislature has failed to create such an option for victims of CUTPA violations...." 207 Conn. at 216, 541 A.2d 472. Indeed, *Fichera* involved alleged deceptive acts by a real estate developer which failed to build recreational facilities it had promised. The *Fichera* plaintiffs argued that they did not discover that the facilities would not be built until the developer sent a letter to the planning commission to that effect. The court held that the letter, which was sent during the limitations period, while it may have brought the deceptive acts to the plaintiffs' attention, was not itself the deceptive or unfair act complained of. 207 Conn. at 211–13, 541 A.2d 472.

The defendant's alleged refusal to disclose information in support of its nondischargeability claim, where the demand was made by the plaintiff post-petition, does not form the predicate for a CUTPA violation. There is no allegation in the Amended Complaint that the defendant had a duty to disclose ·the requested information in the absence of a discovery request following commencement of litigation. Moreover, there is no such duty.

The plaintiff asserted at oral argument that the proceeds of the notes were disbursed to educational institutions over a period of time after execution of the notes, and the last note was not fully disbursed as of the petition date. That assertion is irrelevant because the Amended Complaint contains no such allegation. Further, the plaintiff does not allege that the defendant breached its duty to distribute funds under the notes, nor that any such breach could form the basis for a CUTPA action.

■ Even in the absence of the statute of limitations bar, the plaintiff's proposed CUTPA count could not survive a motion to dismiss. The plaintiff cites no authority for the proposition that a lender is under an affirmative duty to advise a borrower that its loan may not be dischargeable in a bankruptcy case. *Cf. Cheshire Mortgage Serv., Inc. v. Montes, supra,* 223 Conn. at 109, 612 A.2d 1130 (a lender who violated statutory duties relating to finance charges violated CUTPA). The notes clearly indicate that they are for an educational purpose, thus putting the borrower on notice that the loans might be insured, guaranteed, or funded by a governmental or nonprofit institution. The plaintiff can hardly claim surprise if it is true that, as the plaintiff alleges in his memorandum, the defendant "participated" or sold the loans as part of a package to a governmental agency established to purchase student loans on the secondary market. There is no allegation that the defendant represented that the loans would be dischargeable in bankruptcy, or that they would not be participated to a governmental agency. If the plaintiff claims injury because he wanted to reserve the option of defaulting on the loans and then discharging the corresponding debts after his children had received the benefit of them, other sections of the code may be implicated. *See* § 523(a)(2).[3]

**3.** There is conflicting authority as to whether CUTPA applies to banks, but the defendant has not raised that issue as a reason for denying leave to amend. *See Am. Sav. Bank, FSB v. Amity Bank,* Civ. No. B–88–534 (D.Conn., July 27, 1989); *Naugatuck Sav. Bank v. Fiorenzi,* 1994 WL 65171, at * 7 (Conn.Sup.Ct., Feb. 25, 1994). In view of my holding, I do not consider whether the Amended Complaint sufficiently alleged that the acts complained of occurred in trade or commerce, *see United States Fidelity & Guar. Co. v. Resolution Trust Corp.,* No. 5:91:CV:680, 1994 WL 369868 (D.Conn., Mar. 14, 1994); *Quimby v. Kimberly Clark Corp.,* 28 Conn.App. 660, 669, 613 A.2d 838, 844 (Conn.App.Ct.1992), or whether more than one act need be pled to state a

## 2.

### Undue Delay or Prejudice

The defendant also argues that amendment should be denied because discovery has been completed and the defendant would be prejudiced by the amendment. Delay, standing alone, does not warrant denial of leave to amend, but leave to amend may be denied if the amendment is delayed unduly and seeks a radical shift in recovery or involves a different period of time and is derived from a different statute. *United States v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 889 F.2d 1248, 1254–55 (2d Cir.1989). Similarly, the adverse party's burden of undertaking discovery does not alone warrant denial of a motion to amend. *Id.* at 1255. However, the court may deny amendment where there has been inordinate delay, the movant offers no satisfactory explanation, and the amendment would prejudice the defendant. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990); *Rose Hall Ltd. v. Chase Manhattan Overseas Banking Corp.,* 576 F.Supp. 107, 173–174 (D.De.1983), *aff'd,* 740 F.2d 956–58 (3d Cir. 1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985).

Although no trial date has been set, discovery has been completed and the proposed amendment would add a new and quite different theory of recovery. The complaint before amendment merely sought a declaration of dischargeability based on fraud, mistake and the inapplicability of § 523(a)(8). If the amendment is permitted, the plaintiff would seek compensatory damages, punitive damages and attorneys' fees based on CUTPA violations. The plaintiff admits knowing of the defendant's position on nondischargeability since December of 1991, more than 13 months prior to the instant motion to amend. The fact that the plaintiff may have learned of the alleged participation of the loans during discovery is irrelevant, as the Amended Complaint asserts that the unfair and deceptive acts were the defendant's failure to disclose the nature of the loans at their inception and the subsequent assertion of nondischargeability, not the participation itself. Amendment should therefore be denied on the basis of undue delay and prejudice to the defendant.

## ORDER

The plaintiff's motion to amend is DENIED, and IT IS SO ORDERED.

## APPENDIX

### *AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

Jonathan B. Kellogg, Debtor and Debtor-in-Possession, by and through his attorneys, Yost & Associates, P.C., respectfully represents the following:

1. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 13[3]4 and 11 U.S.C. § 523. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2. The Plaintiff filed a voluntary Petition under Chapter 11 of Title 11 of the United States Code on or about September 2, 1992. Debtor is operating under a confirmed Chapter 11 Plan. An Order Confirming the Plan was entered on December 27, 1991.

3. All ordinarily dischargeable debts have been discharged pursuant to the terms of the Chapter 11 Plan.

4. On or about August 5, 1986, the Plaintiff executed a note with Key Bank of Central Maine, predecessor of Key Bank of Maine (hereinafter "Key Bank"), for a loan to help pay for the education of his daughter Elizabeth (hereinafter the "1986 Loan").

5. The proceeds from the 1986 Loan were disbursed directly to the educational institution.

6. On or about July 28, 1987, the Plaintiff executed a second note with Key Bank, for a loan to help pay for the education of his daughter Elizabeth (hereinafter the "1987

---

claim under CUTPA. *Compare AT & T Communications v. Corsetti Constr.,* 1993 WL 266560 (Conn.Sup.Ct., July 2, 1993) (one transaction sufficient) *with Dalton v. Knell,* 1993 WL 365915 (Conn.Sup.Ct., Sept. 13, 1993) (contra).

Loan"). The 1987 Loan was an extension of the 1986 Loan.

7. The proceeds from the 1987 Loan were disbursed directly to the educational institution.

8. On or about July 19, 1988, the Plaintiff executed a third note with Key Bank for a loan to help pay for the education of his daughter Victoria (hereinafter the "1988 Loan").

9. The proceeds from the 1988 Loan were disbursed directly to the educational institution.

10. The Plaintiff received the Loans to pay for his daughters' education. The educational benefit was received by his daughters, Elizabeth and Victoria, not by the Plaintiff.

## COUNT I

11. Paragraphs 1 through 10 are hereby incorporated by reference.

12. Key Bank has asserted the loans are nondischargeable as an "educational loan" within the purview of 11 U.S.C. § 523(a)(8) but has refused and neglected, despite due demand to produce evidence to support said assertion.

13. At the time the Plaintiff applied for the Loans and the Notes were signed, Key Bank did not disclose that these Loans would be made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution.

14. Key Bank induced the Plaintiff to execute the notes through fraud or mistake by presenting the loans as consumer loans, as an alternative to traditional student loans, and therefor[e] the promissory notes should be rescinded.

## COUNT II

15. Paragraphs 1 through 10 are hereby incorporated by reference.

16. The Plaintiff did not receive any educational benefit from the alleged "Student" loans and 11 U.S.C. § 523(a)(8) is not intended to apply to the Plaintiff.

## COUNT III

17. Paragraphs 1 through 10 are hereby incorporated by reference.

18. Failure to grant a discharge to the Plaintiff of the 1986, 1987 and 1988 Loans will impose an undue hardship on the Plaintiff.

## COUNT IV

19. Paragraphs 11 through 14 of Count 1 are hereby incorporated by reference.

20. The foregoing constitutes a violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42–110a *et seq.* on the part of the Defendant in that said actions by the Defendant were immoral, oppressive and unscrupulous and caused substantial injury to the Plaintiff.

**WHEREFORE,** the Plaintiff respectfully requests:

1. That re[s]cission be granted with respect to the Loans and a finding be made that any duty to make restitution to Key Bank is discharged;

2. Money damages;

3. Punitive damages pursuant to C.G.S. § 42–110g(a);

4. A reasonable attorney's fee pursuant to C.G.S. § 42–110g(d); and

5. Such other and further relief as in law or equity may appertain.

Dated: New Haven, Connecticut

January 29, 1993

YOST & ASSOCIATES, P.C.

Attorneys for Jonathan B. Kellogg

Debtor and Debtor-in-Possession

by: Jonathan D. Zabin

Jonathan D. Zabin, Esq. (ct07757)

Two Whitney Avenue

New Haven, CT 06510

(203) 789–1250

COMPDD

4095–2