In re STANWICH FINANCIAL
SERVICES CORP.,
Debtor.

Official Committee of Unsecured
Creditors, Plaintiff,

v.

Jonathan H. Pardee, Carol P. Havican, Individually and as Trustee of the Jonathan H. Pardee Charitable Remainder Trust, Ogden H. Sutro, Virginia S. Morse, Individually and as Co–Trustee of the Dunbar Heeler Trust, Peter M. Dodge, Individually and as Co–Trustee of the Dunbar Wheeler

Robert U. Sattin, Reid and Riege, PC, Hartford, CT, for the debtor.

Deirdre A. Martini, Pamela B. Corrie, Ivey Barnum & O'Mara, Greenwich, CT, for Creditors' Committee.

Lawrence S. Grossman, James Berman, Zeisler & Zeisler, Bridgeport, CT, for Pardee respondents.

John F. Carberry, Cummings and Lockwood, Stamford, CT, for Sutro respondents.

Scott D. Rosen, Cohn, Brinbaum & Shea, Hartford, CT, for Bear, Stears.

David B. Zabel, Bridgeport, Ct, for Hinkley, Allen.

## ORDER ON STANDING OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS

ALAN H. W. SHIFF, Chief Judge.

On June 25, 2001, Stanwich Financial Services Corp. commenced this chapter 11 case. On May 3, 2002, pursuant to an April 16, 2002 court approved stipulation by the debtor and the Official Committee of Unsecured Creditors ("the Committee"), the Committee filed the instant adversary proceeding to recover, on behalf of the bankruptcy estate, certain transfers to the defendants arising out of a prepetition transfer of stock. *See* 11 U.S.C. § 544(b).

1. The jurisdictional challenge raised by the respondents, in reliance on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), is not addressed here.

2. Reference by the respondents to § 506 is not applicable, *see* text *infra*.

3. Section 544(b) provides

The trustee [or a debtor in possession, *see* 11 U.S.C. § 1107] may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor

On September 23, 2002, the court granted the Committee's *ex-parte* application for a temporary restraining order against the Pardee and Sutro defendants (collectively, the "respondents") which prohibits scheduled payments from the Jonathan H. Pardee Charitable Remainder Unitrust and the Dunbar Wheeler Trust. The threshold issue here is the Committee's standing to commence and prosecute the adversary proceeding.[1]

### Statutory Construction

■ The respondents, relying on the plain language of 11 U.S.C. §§ 506[2] and § 544(b)[3] *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), assert that the Committee lacks standing because the bankruptcy code only authorizes a trustee or debtor in possession to commence a fraudulent transfer claim.[4] They argue that the language "the trustee may" utilized generally in the bankruptcy code necessarily eliminates all other parties from prosecuting a fraudulent transfer claim. That argument fails because the precise textual interpretation of one section cannot and should not be blindly applied to another. *See United States v. Cleveland Indians Baseball Company*, 532 U.S. 200, 217, 121 S.Ct. 1433, 149 L.Ed.2d

holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
11 U.S.C. § 544(b).

4. The respondents have also expressed their agreement with a decision of the Court of Appeals for the Third Circuit in *Official Committee of Unsecured Creditors of Cybergenics v. Chinery*, 304 F.3d 316 (3rd Cir.2002) (holding that "a court may not authorize a creditor or creditors' committee to bring suit under § 544 derivatively"), notwithstanding that that decision has been vacated pending an *en banc* review.

401 (2001) ("statutory construction is a holistic endeavor ... the meaning of a provision is clarified by the remainder of the statutory scheme when only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") *(quoting United Saving Assn. v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). *See also Varity Corp. v. Howe,* 516 U.S. 489, 519, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (Thomas J., dissenting) ("We would have to read [ERISA] § 502(a)(3) in a vacuum ... to find in respondents' favor").

Moreover, the respondents' insistence that *Hartford Underwriters* is controlling [5] is troublesome. Not only is it inapplicable, as that decision involved the interpretation of § 506(c),[6] which is not at issue, but the Court stated:

> [w]e do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead ... Amici ... draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, *see* 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee... *Whatever the validity of that practice, it has no analogous application here,* since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead....

*Id.,* 530 U.S. at 13 n. 5, 120 S.Ct. 1942 *(emphasis added).*

The respondents' narrow reading of § 544(b) further ignores Second Circuit precedent and upsets the equitable balance struck by a holistic reading of the bankruptcy code.

The Bankruptcy Code has traditionally served as a fulcrum to balance competing economic interests. On the one hand, those who extend credit seek the preservation of their collateral in order to enforce the benefit of their bargain. On the other, a broader public policy, recognizing the social benefits of providing a fresh economic start to financially distressed debtors, encourages, in the context of chapter 11, rehabilitation by providing a reasonable opportunity for a successful reorganization within a reasonable time.

*United Steel Workers of America v. Jones & Lamson Machine Co., Inc. (In re Jones & Lamson Machine),* 102 B.R. 12 at 15 (Bankr.D.Conn.1989). *See also In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 167 (Bankr.S.D.N.Y.1990).

A basic assumption that underlies American bankruptcy law is that it is often preferable to encourage and facilitate rehabilitation of businesses in financial trouble instead of providing for liquidation only. From a broad perspective, rehabilitation is better for the economy because it minimizes unemployment and waste of business assets. It is much more productive to use assets in the industry for which they were designed instead of selling them as distressed merchandise in liquidation sales. Also, rehabilitating a business is in the best

---

**5.** *See* Respondents' *Memorandum in Opposition* at 20 and November 20, 2002 hearing record at 11:19–20.

**6.** Section 506(c) provides that "The trustee may recover from property securing an al-

lowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

long-term interest of creditors and shareholders.

*Marine Electric Railway Products Division, Inc. v. New York City Transit Authority, et al., (In re Marine Electric Railway Products Division, Inc.),* 17 B.R. 845, 853 (Bankr.E.D.N.Y.1982).

■ The core objectives of bankruptcy cannot be achieved if those who would otherwise be exposed to transfer avoidance actions, *e.g.,* §§ 544, 547, 548, and 549, are insulated by the reluctance or inability of a debtor-in-possession to commence and prosecute such actions. The derivative standing of an Official Committee of Unsecured Creditors fills that void where, as here, there is a reasonable basis for the action. *See In re Housecraft Industries USA, Inc.,* 310 F.3d 64, 71 n. 7 (2nd Cir. 2002); *In re STN Enterprises,* 779 F.2d 901, 904 (2nd Cir.1985). Relying on *STN,* the Bankruptcy Appellate Panel for the Ninth Circuit rejected a challenge to derivative standing:

> a flat prohibition against any surrogate representation ... not only conflicts with accepted practice, it also fails to recognize the potential benefits of allowing an unsecured creditors' committee to conduct estate litigation. The DIP has an obligation to pursue all actions that are in the best interests of creditors and the estate... An unsecured creditors' committee has a close identity of interests with the DIP in this regard. Allowing the DIP to coordinate litigation responsibilities with an unsecured creditors' committee can be an effective method for the DIP to manage the estate and fulfill its duties. Here, for example, [the debtor] was able to concentrate its resources on rehabilitating the business while the Committee prosecuted the adversary complaint. Rather than a flat prohibition, impartial judicial balancing of the benefits of a committee's representation better serves the bankruptcy estate. So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditors' committee to represent the estate presents no undue concerns.

*Liberty Mutual Insurance Company v. Official Unsecured Creditors' Committee of Spaulding Composites Co. (In re Spaulding Composites Co., Inc.),* 207 B.R. 899, 904 (9th Cir. BAP 1997) *(internal citations omitted).*

ACCORDINGLY, IT IS ORDERED that the Committee has standing to commence and prosecute the instant adversary proceeding on behalf of the bankruptcy estate.