In re STANWICH FINANCIAL
SERVICES CORP.,
Debtor.

Official Committee of Unsecured
Creditors, Plaintiff,

v.

Jonathan H. Pardee, Carol P. Havican, Individually and as Trustee of the Jonathan H. Pardee Charitable Remainder Trust, Ogden H. Sutro, Virginia S. Morse, Individually and as Co–Trustee of the Dunbar Heeler Trust, Peter M. Dodge, Individually and as Co–Trustee of the Dunbar Wheeler Trust, Bear, Stearns & Co., Inc., First Union Capital Markets Corporation, Hinckley, Allen & Snyder, LLP, Scott A. Junkin, PC, Robinson–Humphrey Co., LLC, and John Does 1 through 20, Defendants.

Bankruptcy No. 01–50831.
Adversary No. 02–5023.

United States Bankruptcy Court,
D. Connecticut.

Nov. 23, 2004.

Robert U. Sattin, Reid and Riege, PC, Hartford, CT, for the debtor.

Melissa Zelen Neir, Justin B. Blackhall, Ivey, Barnum & O'Mara, Greenwich, CT, for the Creditors' Committee.

Lawrence S. Grossman, Zeisler & Zeisler, Bridgeport, CT, for the Pardee defendants.

David B. Zabel, Cohen and Wolf, P.C., Bridgeport, CT, for Hinckley, Allen.

Seth L. Cooper, Brody, Wilkinson & Ober, P.C., Southport, CT, Mitchell A. Lowenthal, Carmine D. Boccuzzi, Jr., Cleary, Gottlieb, Steen & Hamilton, New York City, for Robinson–Humphrey.

## DECISION AND ORDER ON THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR LEAVE TO AMEND

ALAN H. W. SHIFF, Bankruptcy Judge.

On May 3, 2002, the Official Committee of Unsecured Creditors commenced this adversary proceeding ("Original Complaint") to recover transfers made during a May 1997 leveraged buyout ("LBO"). The Original Complaint also alleged that Jonathan Pardee and Ogden Sutro[1] breached fiduciary duties as officers and were unjustly enriched as shareholders of Settlement Services Treasury Assignments, Inc. ("SSTAI"), a predecessor of the debtor. On September 11, 2003, the Committee moved to dismiss all claims against defendants Cameron & Mittleman, P.C., Bear Sterns & Co., Inc., and Scott A. Junkin, P.C. On that date, the Committee also filed the instant motion ("Motion") for leave to amend the Original Complaint. On October 14, 2003, the court sustained objections to the Committee's motion to dismiss and ordered the Committee to file a revised amended complaint which was consistent with the court's order.

On October 28, 2003, the Committee filed the revised amended complaint ("Amended Complaint"), which supplemented the factual allegations and added new counts. Pardee, Robinson–Humphrey Co., LLC, and Hinckley Allen & Snyder, LLP have objected to the Motion.

## Discussion

■ Rule 15(a), F.R.Civ.P., made applicable by Rule 7015, F.R.Bank.P., provides in relevant part:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

Since answers have been filed, see docket nos. 49, 95, & 96, the Committee is required to seek leave of the court to amend. The Supreme Court has instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (emphasis added).

■ In this circuit, " '[a]n amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis.' " *In re Kellogg,* 166 B.R. 504, 506–07 (Bankr.D.Conn.1994) (*quoting McNally v. Yarnall,* 764 F.Supp. 853, 855 (S.D.N.Y.1991)); *see also Health–Chem*

---

1. References to Pardee and Sutro also include the trusts named as defendants.

*Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990). Thus, the Motion should be denied if, accepting all of the factual allegations in the Amended Complaint as true and drawing all inferences in the Committee's favor, " 'it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of [the Committee's proposed] claims.' " *Urashka v. Griffin Hosp.,* 841 F.Supp. 468, 472 (D.Conn.1994) (*quoting De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979)). The court may also deny the Motion if the Amended Complaint asserts a cause of action that is barred by the applicable statute of limitations. *Kellogg,* 166 B.R. at 507.

### *Standing*

Robinson, which is alleged to have been SSTAI's financial advisor, argues that the Motion should be denied because the proposed amendment is futile. Robinson argues that the Committee lacks standing to assert certain claims, an argument which also extends to Hinckley, alleged to be SSTAI's legal counsel (collectively, the "Professionals").[2] The new counts against the Professionals in the Amended Complaint are: breach of, the aiding-and-abetting of a breach of, and conspiracy to breach fiduciary duties, *see* Counts VII, VIII, and IX; intentional, negligent, and fraudulent misrepresentation, see Counts X, XI, and XII; and, as to Hinckley only, unjust enrichment, *see* Count XIII (collectively, the "Professional Counts"). All of the Professional Counts are different ave-

nues for alleging the same wrongdoing, *i.e.,* the Professionals' assistance in completing the LBO. *See In re Wedtech Corp.,* 81 B.R. 240, 241 (S.D.N.Y.1987) ("[A]s alleged against an accountant [or another third party professional], claims of fraud, malpractice, aiding and abetting a fraud . . ., fraudulent transfer, breach of fiduciary duty, unjust enrichment, and monies had and received, allege what is essentially a 'single form of wrongdoing under different names.' ") (*quoting Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.1982)).

The burden of establishing standing lies with the party claiming that status, *i.e.,* the Committee. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995). Parenthetically, it is observed that on December 27, 2002 ("December 27th Decision"), the court held that the Committee had standing to assert the claims in the Original Complaint.[3] *See In re Stanwich Fin. Servs.,* 288 B.R. 24 (Bankr. D.Conn.2002). The Committee now claims that it has an equal or greater standing than a bankruptcy trustee, and that status enables it to sue third parties on behalf of unsecured creditors even if the action would not benefit the bankruptcy estate and the debtor would not have standing to pursue the action.

In support of that position, the Committee cites to *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989). *St. Paul* held that "if a claim is a general one, with no particularized injury arising from it, and if that claim could be

---

2. The Committee argued that Robinson's "complex Rule 12–type argument[]" could "more properly be considered in subsequent proceedings." Committee Reply at 2. But as noted *supra* at 227, if the amendment would not survive a motion to dismiss, the Motion should be denied.

3. Since Robinson was not a party to the December 27th Decision, and the Professional Counts are distinct from the counts in the Original Complaint, the December 27th Decision is not binding on Robinson. *See In re Roberti,* 183 B.R. 991 (Bankr.D.Conn.1995).

brought by any creditor of the debtor, the trustee is the proper person to assert the claim ...." But that decision does not support the Committee's argument. *St. Paul* only addressed whether an individual creditor could bring its own action to recover potential property of the estate. The court concluded that the trustee alone had the right to commence an action to recover property for the estate. *See id.* at 702 ("[W]e believe that under the Bankruptcy Code and the circumstances of this case, if either of [the creditor's] asserted causes of action in this suit is property of the debtor or a claim otherwise properly asserted by the bankruptcy trustee, [the creditor] does not have standing to raise that cause of action outside of the bankruptcy proceeding.").

Thus, contrary to the Committee's argument, *St. Paul* does not hold that a trustee has standing to pursue a claim based solely on an allegation that creditors suffered a generalized harm. Since the Committee "can only maintain those actions that the debtor[ ] could have brought prior to the bankruptcy proceedings," *Hirsch*, 72 F.3d at 1093, the question before the court is whether the debtor had a prepetition right to assert the Professional Counts.[4]

■ While both parties agree that state law determines whether the debtor, and derivatively the Committee, may commence and prosecute the Professional Counts, *see In re Mediators, Inc.*, 105 F.3d 822, 826–27 (2d Cir.1997), they disagree as

to which state's law should govern. Robinson argues that the law of Connecticut governs resolution of the state law Professional Counts. The Committee claims that federal choice of law rules apply, which dictate that the law of the jurisdiction with the most significant relationship to the action should apply. The Committee contends that in this case that jurisdiction is Rhode Island.

The Second Circuit held in *In re Gaston & Snow*, 243 F.3d 599, 605 (2d Cir.2001), that bankruptcy courts considering state law claims that do not implicate significant federal bankruptcy policy concerns should apply the choice of law rules of the forum state rather than the federal choice of law rules.[5] The Committee argues that the marshaling of assets for a bankruptcy estate constitutes such a concern, but *Gaston* concluded that a suit by a trustee against a debtor's former clients for unpaid fees, *i.e.*, an action which had the effect of marshaling the assets of an estate, did not present a significant federal bankruptcy policy concern. By that analysis, the law of the forum state, Connecticut, applies here. It is noteworthy, however, that even if Rhode Island law were applied, a different result would not follow because the relevant law of the two states is similar.

■ Robinson bases its argument that the Committee lacks standing on the holding in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991),

---

4. Moreover, the Committee's broad reading of *St. Paul* can not be accepted because it is inapposite to the holdings of more recent decisions holding that a trustee or creditor's committee lacked standing to assert claims that contained generalized harm to the creditor body. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991), *In re Mediators, Inc.*, 105 F.3d 822 (2d. Cir.1997), and *Hirsch*, 72 F.3d at 1085, discussed in further detail *infra* at 229.

5. The Committee urged this court to follow *In re Segre's Iron Works, Inc.*, 258 B.R. 547 (Bankr.D.Conn.2001), which utilized federal choice of law rules in a proceeding to determine the allowance of a bankruptcy claim, *see* § 502. But that decision, which preceded *Gaston*, is distinguishable because it involved the resolution of an issue at the core of the administration of a bankruptcy case, *i.e.*, the allowance or disallowance of asserted claims.

that when "a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." Moreover, when the alleged malfeasor is the corporation's sole shareholder and decision-maker, the *Wagoner* rule bars the trustee from suing even if the trustee claims that the debtor was harmed because, in that situation, the third party aider-and-abettor cannot be liable to the debtor. *Id.* at 120; *see also In re Bennett Funding Group, Inc.*, 336 F.3d 94, 100 (2d Cir.2003); *Mediators*, 105 F.3d at 827 ("[W]here the principal and agent are one and the same," if the agent is alleged to have stripped the corporation of assets, it is presumed that the principal, who is the same individual merely wearing a different hat, had knowledge of the actions.).

█ It has accordingly been determined in this circuit that a bankruptcy trustee or creditors' committee acting on behalf of a debtor corporation lacks standing to assert actions against alleged third-party aider-and-abetters when the sole shareholder of the debtor corporation is alleged to have perpetrated the fraud. *See Hirsch*, 72 F.3d 1085, 1094 (2d Cir.1995) (holding under Connecticut law a bankruptcy trustee lacked standing to sue an accounting firm hired by the debtor in connection the debtor's real estate ponzi scheme); *Wagoner*, 944 F.2d at 119–20 (holding that a bankruptcy trustee had no standing to sue a professional for aiding and abetting the unlawful investment activity of the president and sole shareholder of the bankrupt company); *Mediators*, 105 F.3d at 822 (holding that the creditors' committee could not sue third party aiders-and-abettors because the participation of the sole shareholder and decision-maker of the debtor rendered the debtor a participant).

Nonetheless, the Committee, citing *Reider v. Arthur Andersen, LLP*, 47 Conn. Supp. 202, 784 A.2d 464 (2001), argues that it has standing to prosecute the Professional Counts under Connecticut law. *Reider* held that an insurance commissioner, as a liquidator of an insolvent insurance company, had standing to assert claims against third parties who assisted the sole owner and shareholder of the company in its fraudulent schemes. However, that holding was dependent upon that fact that the insurance commissioner was specifically empowered under state statutes and regulations to control insurance companies. Similarly, *Deposits Econ. Protection Corp. v. Fleet Fin. Group, Inc.*, 1998 WL 773672 (R.I.Super.1998), also cited by the Committee in support of the same argument under Rhode Island law, is distinguishable because it involved banking, a specially regulated industry.

The Committee concedes that "the settlement services industry[, at issue in this case,] is not as heavily regulated as the insurance or banking industries." Committee's Response at 39. Despite that difference, the Committee still argues that the facts here are comparable to *Reider* because they both allege generalized harm to many creditors. Yet, those allegations could just as easily describe the ponzi scheme in *Hirsch*, and in that case, the Second Circuit concluded a trustee lacked standing under Connecticut law to assert claims against a third-party aiding-and-abetting accounting firm. *Hirsch*, 72 F.3d at 1094. Notably, *Reider* observed that the *Wagoner* rule has "considerable persuasive power," further demonstrating its validity under Connecticut law. *Reider*, 784 A.2d at 472.

Here, the Amended Complaint alleges that the Professionals were third party conspirators or aider-and-abetters to the fraudulent acts of defendants Pardee and

Sutro, who are also alleged to be the controlling shareholders and officers:

> Defendant [Pardee] is an individual who ... performed certain acts or caused certain events to occur, which form the basis, in whole or in part, of [the Committee's] claims in this action. From 1992 through May 20, 1997, Pardee was President, Secretary, a director and majority shareholder of SSTAI ... and received transfers of funds which are alleged to be fraudulent transfers recoverable by [the debtor].

> Defendant [Sutro] is an individual who ... performed acts or caused certain events to occur which form the basis, in whole or in part, of [the Committee's] claims in this action. Sutro was Executive Vice President, Treasurer, a director and minority shareholder of SSTAI until May 20, 1997, and received transfers of funds which are alleged to be fraudulent transfers recoverable by [the debtor].

Amended Complaint at ¶¶ 6, 9.[6] Those allegations fall directly under the *Wagoner* rule. Accordingly, it is concluded that the Committee lacks standing to assert the Professional Counts.

### Statute of Limitations

■ Pardee, Hinckley, and Robinson also objected to the Amended Complaint for the reason that certain counts were barred by the statute of limitations. Those objections do not need to be considered because the conclusion that the Committee lacks standing to assert the Professional Counts mandates denial of the Motion. Nonetheless, Pardee's objection will be considered in the context of what allegations the Committee may include in any revised amended complaint.

■ On November 14, 2002, Pardee and Sutro moved to dismiss certain counts of the Original Complaint, arguing that the Committee's allegations of intentional and constructive fraudulent transfers, *see* §§ 544(b)(1) & 548, were barred by the statute of limitations. On April 9, 2003, the court denied that motion, holding that there were sufficient allegations to establish fraudulent concealment, which would equitably toll the statute of limitations. *See In re Stanwich Fin. Servs.*, 291 B.R. 25 (Bankr.D.Conn.2003) ("April 9th Decision").

Since Pardee was a party to the April 9th Decision, he is bound by it to the extent the issues are the same. *See In re Roberti*, 183 B.R. 991 (Bankr.D.Conn. 1995). That conclusion is disputed. Pardee's objection relates primarily to a new conversion allegation, *see* Count XIV, as well as certain additional new allegations in the Amended Complaint (collectively, the "New Allegations"). Pardee argues that the New Allegations are distinguished from the claims in the April 9th Decision because the conversion count is a state law claim for which Connecticut, rather than Rhode Island, law applies. He also argues that the New Allegations involve a different factual predicate.

As noted, the April 9th Decision involved Rhode Island law, as neither party argued otherwise. The counts considered in the April 9th Decision were brought under the bankruptcy code, and since allegations based on the code clearly implicate a significant federal bankruptcy policy, federal choice of law rules would apply, *i.e.*, the law of the state with the most significant

---

6. Parenthetically, it is noted that the Committee did not contend that the fact there were two shareholders, rather than one, was a distinguishing factor. Pardee and Sutro were

the only shareholders, *see* ¶ 49 of the Original Complaint, and since both are alleged to have conspired in the fraud, this case is substantively equivalent to a sole shareholder case.

relationship. *See Gaston,* 243 F.3d at 605. In contrast, the conversion count is a purely state law claim, and Pardee persuasively argues that under *Gaston,* Connecticut's choice of law applies.[7] *See supra* at 228. It is noteworthy that the result does not change if Rhode Island law is applied because the fraudulent concealment statutes of those two states are essentially the same. *Compare* R.I. Gen. Laws § 9–1–20 *with* Conn. Gen.Stat. § 52–577; *see also Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 10 F.Supp.2d 138, 157 (D.Conn.1998), *rev'd on other grounds,* 196 F.3d 409 (2d Cir.1999).

Pardee argues that the New Allegations are factually distinct from the Original Complaint, but it is clear from a reading of the Amended Complaint, in the light most favorable to the Committee, *see supra* at 227, that the Committee alleges that preceding and through the 1997 LBO, Pardee engaged in a series of misdeeds and fraudulent acts that constituted a larger scheme of deceit. Accordingly, the earlier conclusion of this court that the Committee has sufficiently alleged fraudulent concealment is binding on Pardee's objection to the New Allegations. *See Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362 (D.Conn.1987) (holding that an earlier finding that allegations of fraudulent concealment were sufficient was dispositive in the absence of a reason to revisit it for purposes of a similar motion against an amended complaint). Nevertheless, even without a consideration of the April 9th Decision, the same result would follow.

 Whether fraudulent concealment "is available to the [Committee], in tolling the statute of limitations, *is a*

question of fact that should be determined at trial by the trier of fact." *Barragan v. Norwalk Transit Dist.,* 2004 WL 113621, at *6 (Conn.Super.Jan.7, 2004) (emphasis added); *see also Villarini–Garcia v. Hospital Del Maestro, Inc.,* 8 F.3d 81, 87 (1st Cir.1993) ("[T]he statute of limitations issue in [a jurisdiction with fraudulent concealment available] should not be withdrawn from the jury by summary judgment [or a motion to dismiss]."); *Osborn v. State,* No. NC840101, 1992 WL 813641 (R.I.Super. July 13, 1992). Moreover, even though "the fraudulent concealment tolling statute generally requires an affirmative act of concealment beyond mere silence, non-disclosures are sufficient where … the defendant is under a fiduciary duty to disclose material facts." *Fenn v. Yale Univ.,* 283 F.Supp.2d 615 (D.Conn.2003). Here, it is concluded that the Amended Complaint sufficiently alleges facts that, if proven at trial, may demonstrate that Pardee fraudulently concealed his alleged actions. *See* Amended Complaint ¶¶ 6, 19, 33–34, 36, 38, 45, 48, 53–58, 65–66, 77–80, 113–28, 142–43.

For the foregoing reasons, it is

ORDERED that the Motion is denied; and it is further

ORDERED that on December 14, 2004 at 2:30 p.m., a scheduling conference will be held on (i) any motion for leave to file a Second Amended Complaint, (ii) oral argument on the court's jurisdiction over certain cross-claims, *see* docket nos. 122 & 123, (iii) a bar date for discovery, and (iv) a date for trial.

---

**7.** Under Connecticut law, "statutes of limitations are considered procedural and thus Connecticut's own statutes of limitations will usually govern claims asserted in federal" courts sitting in Connecticut. *Slekis v. Nat'l R.R. Passenger Corp.,* 56 F.Supp.2d 202, 204 (D.Conn.1999).